JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 5:24-cv-00168-RGK-SHK | Date | April 1, 2024 |
|---|---|---|---|
| Title | *Luz Hernandez v. United Ground Express, Inc.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:**     (IN CHAMBERS) Order Re: Plaintiff's Motion to Remand [DE 15]

## I.   INTRODUCTION

On October 30, 2023, Luz Hernandez ("Plaintiff") filed a class action complaint in state court against United Ground Express, Inc. ("Defendant"). (ECF No. 1-2.) Plaintiff, on behalf of herself and all others similarly situated, alleges that Defendant failed to: (1) pay minimum and straight time wages; (2) pay overtime wages; (3) provide meal periods; (4) authorize and permit rest periods; (5) timely pay final wages at termination; (6) provide accurate itemized wage statements; and (7) indemnify employees for expenditures. Plaintiff additionally alleges that Defendant engaged in unfair business practices. (*Id.*)

On January 25, 2024, Defendant removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332, 1441, and 1446. (ECF No. 1.) On February 26, Plaintiff filed a First Amended Complaint ("FAC") and the present Motion to Remand, in which she argues that the amount in controversy does not meet the $5 million minimum requirement set forth by CAFA. (ECF Nos. 14, 15.)  For the following reasons, the Court **GRANTS** Plaintiff's Motion.

## II.   FACTUAL BACKGROUND

Plaintiff is a California resident who worked for Defendant from October 2019 until January 2023. (FAC ¶ 10.) Defendant is a corporation incorporated under the laws of Delaware, with its principal place of business in Illinois. (Def.'s Notice of Removal ¶¶ 11–13, ECF No. 1.)

Plaintiff alleges that, during the relevant time period, Defendant maintained a systematic, company-wide policy and practice of failing to pay employees for all hours worked (including all minimum, straight time, and overtime wages), provide employees with timely and duty-free meal periods, authorize and permit employees to take timely and duty-free rest periods, timely pay employees at the termination of employment, provide employees with accurate and itemized wage statements, and indemnify employees' costs incurred in direct discharge of duties of employment. (FAC ¶ 7.) Plaintiff further alleges that Defendant violated the California Business & Professions Code by engaging in these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-00168-RGK-SHK | Date | April 1, 2024 |
| Title | *Luz Hernandez v. United Ground Express, Inc.* | | |

breaches of the California Labor Code. (*Id.* ¶¶ 87–100.) Accordingly, Plaintiff seeks monetary and injunctive relief against Defendant on behalf of herself and all persons who worked for Defendant in California as an hourly-paid or non-exempt employee from May 5, 2019, until notice to the class is sent. (*Id.* ¶ 29.)

### III.     JUDICIAL STANDARD

A defendant may remove a case from state court to a federal court where original jurisdiction would be proper. 28 U.S.C. § 1441(a). Under CAFA, district courts are vested with original jurisdiction over putative class actions where (1) the amount in controversy exceeds $5 million, (2) the class members number at least 100, and (3) at least one plaintiff is diverse from any one defendant. 28 U.S.C. § 1332(d)(2).

Ordinarily, federal courts must "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Importantly, the defendant still bears the burden to show by preponderance of the evidence that removal is proper. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("[In enacting CAFA,] Congress intended to maintain the historical rule that it is the proponent's burden to establish a prima facie case of removal jurisdiction").

A removing party's notice of removal need only state "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. However, when a plaintiff challenges the defendant's assertion of the amount in controversy, evidence establishing the amount is required. *Id.* "Along with the complaint, [courts] consider allegations in the removal petition, as well as 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (quoting *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)). When such a dispute arises, "[c]onclusory allegations as to the amount in controversy are insufficient" to satisfy the removing party's burden of proof. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions . . . [a defendant must] persuade the court that the estimate of damages in controversy is a reasonable one." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 5:24-cv-00168-RGK-SHK | Date | April 1, 2024 |
|---|---|---|---|
| Title | *Luz Hernandez v. United Ground Express, Inc.* | | |

### IV.  DISCUSSION

In its Notice of Removal, Defendant estimates the amount in controversy as $7,943,245.72.[1] Defendant bases this estimate on seven different categories: (1) unpaid minimum wages, straight time wages, and overtime wages; (2) meal period violations; (3) rest period violations; (4) waiting time penalties; (5) inaccurate wage statement penalties; (6) reimbursements owed; and (7) attorneys' fees. These calculations rely on information found in a declaration from Defendant's senior human resources manager, including the number of applicable employees in the proposed class. (Reid Decl. ¶ 20, ECF No. 1-5.)

Plaintiff seeks remand of this action on the ground that the requisite amount in controversy has not been proven by sufficient evidence. Defendant argues against the Motion on two grounds: first, that remand should be denied due to Plaintiff's failure to meet the requirements of Local Rule 7-3; and second, that Defendant has met its burden even in light of Plaintiff's objections. The Court analyzes Defendant's arguments in turn.

#### A.  Local Rule 7-3

As a preliminary matter, Defendant argues that the present Motion should be denied because Plaintiff failed to comply with Local Rule 7-3. Under Local Rule 7-3, "counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." C.D. Cal. L.R. 7-3. If the requirements of Local Rule 7-3 are not met, "[t]he Court *may* decline to consider [the] motion." C.D. Cal. L.R. 7-4 (emphasis added). District courts have "considerable latitude in . . . enforcing local rules that place parameters on briefing." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002).

Here, Defendant argues that Plaintiff did not thoroughly discuss the Motion. According to an email thread memorializing their meet-and-confer, Plaintiff's counsel was "not willing to identify: (a) the portion of the putative class that allegedly suffered California Labor Code violations (if Plaintiff alleges that less than the entire class suffered such violations); or (b) the number of violations that putative class members allegedly suffered." (Bifoss Decl., Ex. 1 at 1, ECF No. 20-2.) Plaintiff does not dispute, or in any way address this purported failure in her Reply. Based on this failure, the Court may deny the Motion outright for failure to comply with Local Rule 7-3. However, because Plaintiff's Motion challenges the Court's jurisdiction, and the Court has an independent duty to ensure jurisdiction

---

[1] Plaintiff argues that Defendant improperly inflated this $7.9 million estimate by including workweeks between the filing of the Complaint and the filing of the Notice of Removal, as well as erroneously extending the statute of limitations for claims based on California's Emergency Rule 9. However, because this estimate still fails for insufficient evidence, the Court need not address this argument.

JS6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 5:24-cv-00168-RGK-SHK | Date | April 1, 2024 |
|---|---|---|---|
| Title | *Luz Hernandez v. United Ground Express, Inc.* | | |

over an action, the Court declines to deny the Motion on this ground. The Court accordingly analyzes Defendant's estimated amount in controversy by assessing each category of damages in turn.

**B.    Minimum Wages, Straight Time Wages, and Overtime Wages**

Plaintiff alleges that Defendant maintained a "systematic, company-wide policy and practice of" failing to compensate for all minimum time, straight time, and overtime worked. (FAC ¶¶ 7, 38.) Defendant estimates that the amount in controversy for these violations is $432,428.27,[2] calculated as follows:

$$100\% \text{ violation rate} * \frac{5 \text{ minutes}}{1 \text{ day}} * \frac{1 \text{ hour}}{60 \text{ minutes}} * \frac{5 \text{ days}}{1 \text{ workweek}} * \frac{\$15.68}{1 \text{ hour}} * 66{,}188 \text{ workweeks}$$

$$= \$432{,}428.27$$

In arriving at this figure, Defendant first assumed every class member must have worked at least 5 minutes off the clock per day, for 5 days per workweek. Defendant then determined that the putative class members worked a combined 66,188 workweeks over the relevant period. (Reid Decl. ¶ 7.) Defendant lastly determined that the average wage for the putative class members for the relevant period was $15.68 hourly. (*Id.*)

Plaintiff argues that Defendant's assumption of a 100% violation rate is unsupported, as Defendant does not provide any "summary-judgment-type evidence" to support the violation rate or identify any allegations in the FAC that support the violation rate. Defendant does not dispute its lack of evidence. Instead, Defendant argues that the Court may assume a 100% violation rate based on Plaintiff's broad allegations of a "systematic, company-wide practice," as various other courts have done so. *See, e.g., Amaya v. Consol. Container Co., LP*, 2015 WL 4574909, *2 (C.D. Cal. July 28, 2015); *Duberry v. J. Crew Grp., Inc.*, 2015 WL 4575018, *6 (C.D. Cal. July 28, 2015). Defendant's reliance on these non-binding cases is misplaced. The Ninth Circuit has made clear that a removing defendant may only make assumptions in its calculations if there is "some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199. Plaintiff's mere allegations that Defendant had a pattern and practice of violations does not reasonably support a 100% violation rate. *Id.* at 1198–99 ("[A] 'pattern and practice of doing something does not necessarily mean *always* doing something.") (emphasis in original). Therefore, Defendant has not demonstrated by a preponderance of the evidence that these violations establish $432,428.27 as the amount in controversy for this category.

---

[2] In its Notice of Removal, Defendant asserts that this amount is $435,887.69. However, Defendant arrives at this amount by incorrectly rounding 25 minutes per week to 0.42 hours per week, rather than 0.41̄6. The Court uses the correct calculation.

JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:24-cv-00168-RGK-SHK | Date | April 1, 2024 |
|---|---|---|---|
| Title | *Luz Hernandez v. United Ground Express, Inc.* | | |

### C. Meal and Rest Period Violations

Plaintiff alleges that Defendant has a "policy and practice" not to provide meal and rest periods, making the statutorily authorized penalty of one hour per non-conforming workday available. (FAC ¶¶ 21–22.) Shifts over five hours are eligible for one meal period, and shifts over four hours are eligible for one rest period. Cal. Lab. Code § 512.1. Defendant estimates that the amount in controversy for these violations combined is $2,075,655.68, calculated as follows:

$$20\% \text{ violation rate} * \frac{1 \text{ hour meal period premium}}{1 \text{ workday}} * \frac{5 \text{ workdays}}{1 \text{ workweek}} * \frac{\$15.68}{1 \text{ hour}} * 66{,}188 \text{ workweeks}$$

$$= \$1{,}037{,}827.84$$

$$20\% \text{ violation rate} * \frac{1 \text{ hour rest period premium}}{1 \text{ workday}} * \frac{5 \text{ workdays}}{1 \text{ workweek}} * \frac{\$15.68}{1 \text{ hour}} * 66{,}188 \text{ workweeks}$$

$$= \$1{,}037{,}827.84$$

In reaching the estimate of $1,037,827.84 for each type of violation, Defendant estimated that each member of the class was not provided a meal or rest period 20% of the time, or once per week, consistent with this Court's assumptions in other cases. *See, e.g., Cardenas v. Asplundh Constr., Corp.*, 2022 WL 370960 at *2 (C.D. Cal. Feb. 8, 2022); *Luna v. Pronto Cal. Gen. Agency, LLC*, 2020 WL 4883879, at *3 n.1 (C.D. Cal. Aug. 19, 2020). Defendant then determined from timekeeping records that the average meal or rest period premium was $15.68 based on the class members' average hourly wage, and that 66,188 workweeks occurred during the relevant period. (Reid Decl. ¶ 7.) Defendant also assumed that every shift worked qualified for a meal and rest period. (*Id.*)

Defendant's estimate is not adequately supported. Defendant does not provide any evidence indicating how many shifts were eligible for both a meal and a rest period over the relevant time period. Defendant only notes that there were 66,188 workweeks, but does not indicate the average workday or workweek length so as to establish the number of shifts eligible for meal and rest periods. Therefore, Defendant has not demonstrated by a preponderance of the evidence that these violations establish $2,075,655.68 as the amount in controversy for this category.

### D. Waiting Time Penalties

Plaintiff alleges that "terminated Class Members" are entitled to recover a statutory penalty from Defendant for its failure to pay all earned wages at time of discharge or within 72 hours of leaving Defendant's employ. (FAC ¶¶ 64–70.) This penalty consists of the continuing wages of the employee at the same rate until paid or until an action for repayment is commenced, with a statutory maximum of 30

JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:24-cv-00168-RGK-SHK | Date | April 1, 2024 |
|---|---|---|---|
| Title | *Luz Hernandez v. United Ground Express, Inc.* | | |

days' pay. Cal. Lab. Code § 203(a). Defendant estimates the amount in controversy for these violations to be $2,102,803.20, calculated as follows:

$$100\% \text{ violation rate} * 566 \text{ employees terminated} * 30 \text{ days maximum} * \frac{8 \text{ hour shift}}{1 \text{ day}} * \frac{\$15.48}{1 \text{ hour}}$$

$$= \$2,102,803.20$$

In calculating this estimate, Defendant determined that there were 566 class members who had been terminated and assumed that all 566 were entitled to waiting time penalties. (Reid Decl. ¶ 9.) Defendant also assumed that every member of the class is entitled to 30 days' worth of waiting time penalties. (Notice of Removal ¶ 60.) Defendant also assumed an 8-hour shift length and calculated the average rate of pay at termination for these individuals at $15.48. (Reid Decl. ¶ 9.)

Defendant's estimate is not adequately supported. Defendant again not only fails to support its assumption of a 100% violation rate, but also fails to cite to any evidence or allegations in the Complaint or FAC that indicate 8-hour shift lengths. Therefore, Defendant has not demonstrated by a preponderance of the evidence that these violations establish $2,102,803.20 as the amount in controversy for this category.

### E. Wage Statement Penalties

Plaintiff alleges that Defendant failed to provide Plaintiff and class members with accurate wage statements. The statutory penalty recoverable for this violation is the greater of all actual damages or fifty dollars for the first violation and one hundred dollars for each violation in a subsequent pay period, up to a maximum of four thousand dollars. Cal. Lab. Code § 226. Defendant estimates the amount in controversy for these violations to be $1,083,350, calculated as follows:

$$100\% \text{ violation rate} * ((\$50 * 637 \text{ initial pay periods}) + (\$100 * 10{,}515 \text{ subsequent pay periods}))$$

$$= \$1,083,350$$

In calculating this estimate, Defendant assumed that 100% of wage statements were inaccurate. Starting from this assumption and accounting for those who would hit the $4,000 statutory cap, Defendant determined that the putative class consisted of 637 members who worked 11,152 eligible pay periods. (Reid Decl. ¶ 10) After calculating that each employee would receive the initial $50 penalty, Defendant then multiplied the $100 penalty by the 10,515 remaining pay periods. (*Id.*)

Defendant's assumption that every wage statement violates the California Labor Code is speculative. Defendant only proffers evidence of the *number* of wage statements issued during the

JS6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 5:24-cv-00168-RGK-SHK | Date | April 1, 2024 |
|---|---|---|---|
| Title | *Luz Hernandez v. United Ground Express, Inc.* | | |

relevant time period, but fails to provide any support for its assumption that every single wage statement issued resulted in a wage statement penalty. Even assuming that violations were widespread based on Plaintiff's allegations, there is no basis to assume that violations were evenly spread such that each wage statement was inaccurate. *See Ibarra*, 775 F.3d at 1199–1200 ("[A] 'pattern and practice' of doing something does not necessarily mean *always* doing something.") (emphasis in original); *cf. Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (finding 100% violation rate supported by allegation that "[n]ot one of the paystubs" was accurate). Thus, Defendant has not demonstrated by a preponderance of the evidence that these violations establish $1,083,350 as the amount in controversy for this category.

**F.      Reimbursement for Expenditures**

Plaintiff alleges that Defendant violated California Labor Code § 2802 by failing to pay for necessary business expenditures by Plaintiff and the class, including but not limited to the use of personal cell phones. (FAC ¶¶ 25, 81.) Defendant estimates the amount in controversy for these violations to be $656,900, calculated as follows:

$$100\% \text{ violation rate} * \frac{\$50}{1 \text{ month}} * \frac{1 \text{ month}}{4 \text{ weeks}} * 52{,}552 \text{ workweeks} = \$656{,}900$$

In calculating this estimate, Defendant assumed that 100% of employees had unreimbursed business expenses. Defendant then assumed that each employee could claim $50 per month in unreimbursed expenses for their cell phone bill. (Notice of Removal ¶ 73.) Defendant split this term across four weeks per month. (*Id.*) Lastly, Defendant determined that the putative class worked at least 52,552 workweeks. (Decl. of Patrick Reed ¶ 10.)

Defendant has proffered only one non-binding case where a court refused to remand a case where the defendant had used an estimate of $50 dollars a month for cell phone costs. In *Anderson v. Starbucks Corp.*, the defendant included a reasonable $50 device reimbursement cost in the alternative calculation, that was not contested meaningfully by the plaintiff. 556 F. Supp. 3d 1132, 1138 (N.D. Cal. 2020). Defendant's reliance on *Anderson* is misplaced. In *Anderson*, the defendants arrived at their estimate from interrogatory responses provided by two members of the proposed class. *See id.* at 1137. Here, Defendant has not pointed to any evidence that *any* eligible employee has incurred $50 dollars per month in expenses, let alone *every* eligible employee. Thus, Defendant has not demonstrated by a preponderance of the evidence that these violations establish $656,900 as the amount in controversy.

**G.      Attorneys' Fees**

Plaintiff seeks reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and California Labor Code §§ 218.5, 226(e), 226(h), 1194, and 2802, which allow for recovery

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:24-cv-00168-RGK-SHK | Date | April 1, 2024 |
|---|---|---|---|
| Title | *Luz Hernandez v. United Ground Express, Inc.* | | |

of fees for nonpayment of wages not covered by § 1194, nonpayment of fringe benefits, inaccurate wage statements, overtime claims, wage statement claims, and reimbursement claims, but not meal or rest period claims. *See Mancilla v. Owens & Minor Distrib., Inc.*, 2023 WL 5321157, at *4 (C.D. Cal. Aug. 18, 2023). Following its original calculation methodology, Defendant appears to estimate the $1,588,649.14[3] amount in controversy for attorneys' fees by first calculating the total monies owed and then applying a benchmark rate as follows:

```
    $432,428.27   in unpaid wages
  $1,037,827.84   in meal period violations
  $1,037,827.84   in rest period violations
  $2,102,803.20   in waiting time penalties
  $1,083,350.00   in wage statement penalties
+   $656,900.00   in owed reimbursements
  $6,351,137.15   total monies owed
        x 0.25   benchmark rate
  $1,587,784.29   attorneys' fees
```

In calculating this estimate, Defendant uses a percentage-of-recovery method by which a Defendant can estimate attorneys' fees as a percentage of expected recovery. Specifically, Defendant uses a 25% benchmark, which has been found to be reasonable in some but not all circumstances. *See Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."); *but see Fritsch*, 899 F.3d at 796 (declining to adopt a per se rule that 25% is reasonable in a class action suit).[4] Regardless of whether 25% is reasonable in this case, as explained above, Defendant fails to provide evidence to support its underlying estimates for all categories of recovery. Thus, any calculation using these unfounded previously discussed estimates is incorrect. Additionally, Defendant's inclusion of meal- and rest-period violations is improper. Accordingly, Defendant has not demonstrated by a preponderance of the evidence that attorneys' fees establish $1,587,784.29 as the amount in controversy.

### H.    Total Amount in Controversy

As explained above, Defendant has not adequately demonstrated that any of its estimates are accurate by a preponderance of the evidence, and thereby fails to demonstrate that the amount in

---

[3] As above, the Court uses the non-rounded terms.
[4] Defendant attaches several unpublished decisions further supporting the 25% benchmark in a Request for Judicial Notice. Because there is adequate published caselaw on this point, the Court need not rely on these cases. Accordingly, the Court **DENIES** Defendant's Request as **moot**.

JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:24-cv-00168-RGK-SHK | Date | April 1, 2024 |
|---|---|---|---|
| Title | *Luz Hernandez v. United Ground Express, Inc.* | | |

controversy meets the $5 million threshold required for removal under CAFA. Accordingly, the Court finds remand proper.

V.      **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion and **REMANDS** the action to state court.

**IT IS SO ORDERED.**

**cc:** Superior Court of California-San Bernardino County, CIVSB2326322

|  | : |
|---|---|
| Initials of Preparer | JRE/sf |